1  Jason M. Erlich., Esq., Cal. Bar # 203661
2  John Scarpino, Esq., Cal. Bar # 151377 *Of Counsel*
   THE ERLICH LAW FIRM
3  150 Post Street, Suite 742
   San Francisco, CA 94108
4  Tel: (415) 296-8420
   Fax: (415) 296-8552
5  Email: jason@erlichlaw.com

6  Attorney for Plaintiff
   Raymond D. Butner

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10 RAYMOND D. BUTNER,                    Case No. **CV08-01764 SJO(RZx)**

11          Plaintiff,                   **COMPLAINT FOR DAMAGES**

12 vs.                                   (1) VIOLATION OF CAL. LABOR CODE § 970
                                         (2) DECEIT (INTENTIONAL
13 BANCO MERCANTIL DEL NORTE,                MISREPRESENTATION)
   S.A., INSTITUCIÓN DE BANCA          (3) PROMISSORY FRAUD
14 MÚLTIPLE, GRUPO FINANCIERO          (4) FRAUDULENT CONCEALMENT
   BANORTE, a Mexican *Sociedad Anónima* (5) NEGLIGENT MISREPRESENTATION
15 *de Capital Variable*; GRUPO           (6) PROMISSORY ESTOPPEL
   FINANCIERO BANORTE, S.A. de C.V.;   (7) BREACH OF CONTRACT
16 and DOES 1 through 25, inclusive,
17
18          Defendants.                  DEMAND FOR JURY TRIAL

19

20      Plaintiff Raymond D. Butner complains against each defendant, demands a trial by jury of all

21 issues, and for causes of action alleges:

22                              **PARTIES**

23      1.      Plaintiff Raymond D. Butner (hereafter "Plaintiff" or "Butner") is a United States

24 citizen and resides in the County of Los Angeles in the State of California.

25      2.      Plaintiff is informed and believes and on that basis alleges that Defendant Banco

26 Mercantil del Norte S.A., Institución de Banca Múltiple, Grupo Financiero Banorte (hereafter

27 referred to as "Banorte") is, and at all times mentioned in this complaint has been, a corporation

28 organized under the laws of the United Mexican States ("Mexico") with its principal place of

- 1 -

COMPLAINT FOR DAMAGES



business in Monterrey, Nuevo Leon, Mexico.

3.     Plaintiff is informed and believes and on that basis alleges that defendant Grupo Financiero Banorte, S.A. de C.V. (hereafter "GF Banorte") is, and at all times mentioned in this complaint has been a corporation organized under the laws of Mexico, with its principal place of business in Monterrey, Nuevo Leon, Mexico.

4.     Plaintiff is informed and believes that defendant GF Banorte is a financial services holding company and is the holding or parent company for Banorte.  Plaintiff is further informed and believes that GF Banorte owns 96 percent of the shares of Banorte and that Banorte represents more than 90 percent of the assets of GF Banorte.

5.     Plaintiff is further informed and believes that Banorte USA Corporation (hereafter "Banorte USA") was created and established as a subsidiary of Banorte for the sole purpose of conducting banking and financial services business in the United States.  Plaintiff is informed and believes that Banorte USA is a corporation, incorporated under the laws of Texas with its principal place of business or headquarters in McAllen, Texas.  Banorte USA is not a defendant in this Complaint.

6.     DOES 1 through 10, inclusive, are sued herein under fictitious names because their true names, capacities, and degrees of responsibility for the acts alleged herein are unknown to plaintiff at this time.  When plaintiff ascertains the true names and capacities of these DOE defendants, plaintiff will amend this complaint to name these defendants by their true names and capacities.   Plaintiff further alleges that defendants Banorte, GF Banorte, and DOES 1 through 10, are each jointly and severally liable as the principal, agent, master, servant, employer, employee or partner of the other defendants, and in performing the acts complained of herein were acting within the scope of such agency, employment, or partnership.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action predicated on 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between a citizen of the State of California and a citizen or subject of a foreign state.

8.     This Court further has personal jurisdiction over each of the named defendants

COMPLAINT FOR DAMAGES

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1    because by their actions as alleged in this Complaint each defendant has purposefully directed its

2    activities towards plaintiff, a resident of the State of California and other residents of the State of

3    California; plaintiff's claims arise out of the named defendants contacts with this State; and this

4    Court's exercise of personal jurisdiction is reasonable under the circumstances.

5          9.      This Court also has personal jurisdiction over each of the named defendants and the

6    plaintiff by virtue of the contract between the parties which provides, in part, that "[a]ny action

7    brought in connection with this Agreement shall be brought in the competent courts of the State of

8    California."

9          10.     Venue is proper in this Court based on 28 U.S.C. § 1391(a) because a substantial part

10   of the events or omissions giving rise to the claims occurred within the County of Los Angeles, State

11   of California and within jurisdiction of this Court.

12         11.     Venue is also proper in this Court based on 28 U.S.C. § 1391(d) because each of the

13   named defendants is an alien corporation subject to the jurisdiction of any United States district court.

14

15                              **FACTUAL ALLEGATIONS**

16     A.  <u>Plaintiff Raymond Butner Was Hired to Provide Professional Services to Banorte.</u>

17         12.     On September 1, 2004, Mr. Butner entered into an Exclusive Professional Services

18   Agreement ("Professional Services Agreement" or "PSA") with defendant Banorte.  The PSA

19   identified Alberto Raúl Guerra Rodríguez (hereafter "Mr. Guerra") and Mauricio Sánchez Vélez

20   (hereafter "Mr. Sánchez") as representatives with authority to act on behalf of and bind Banorte.

21         13.     The initial term of the Professional Services Agreement was for a period of four

22   months.  The parties renewed the Professional Services Agreement every four months, and the final

23   term ended on March 31, 2007.

24         14.     One of the express terms of the Professional Services Agreement required that it "shall

25   be governed by and construed in accordance with the laws of the State of California, without regards

26   to its conflict of law rules."  Further, the Professional Services Agreement required that "[a]ny action

27   brought in connection with this Agreement shall be brought in the competent courts of the State of

28   California" and that the right to jury trial is waived by both parties.

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 3 -

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

15.     Under the terms of the PSA, Mr. Butner agreed to provide his expertise and knowledge as a consultant to Banorte on the "feasibility, risks, returns, terms and conditions" of Banorte investing in or purchasing a money transfer operation business.

16.     Mr. Butner had experience, qualification and proficiency regarding the money transfer business which he had acquired during his career as an independent consultant and through his employment at Home Savings of America, F.A., GroupEx Financial Corporation and Merchants Bank of California, N.A.

17.     During his time as a consultant to Banorte, Banorte expressed interest in acquiring several U.S. money remittance organizations.  Among the entities that were considered as possible acquisition targets were Motran Services Inc., a California corporation (hereafter "Motran" or "Motran Services") with headquarters or its principal place of business in the City of Santa Fe Springs in the County of Los Angeles and El Camino Transferencias, a California corporation with headquarters or its principal place of business in the City and County of San Diego.

18.     In addition to seeking out acquisition targets, Banorte also solicited various California-based money remittance organizations for the purposes of engaging in business with Banorte, promoting their money remittance services in Mexico by utilizing Banorte as a paying agent, marketing the companies' products and services, and to improve the existing business relationships between Banorte and the California-based money remittance organizations.  Among the California-based entities were GroupEx Financial Corporation, El Camino Transferencias, Ria Financial Services Inc., Sigue Corp., Adir Money Transfer Company dba La Curacao Los Angeles, Merchants Bank of California, N.A., Motran Services, and Maniflo Money Exchange Inc.

19.     Mr. Butner, in his role as a Banorte agent, contacted the above-noted California-based entities including making marketing calls, arranging and setting up meetings with representatives of the entities, and meeting directly with representatives of the money remittance businesses.

20.     Additionally, Banorte representatives based in Mexico contacted the above-noted California-based entities including marketing phone calls and arranging meetings with the entity representatives.

21.     Based on Mr. Butner's advice and counsel, Banorte identified two U.S. money

- 4 -

remittance organizations, UniTeller Financial Services, Inc. (hereafter "UniTeller") and Motran Services as potential companies to be purchased or acquired by Banorte.

22.     Banorte began negotiations with UniTeller and Motran Services to purchase and acquire the businesses of each of the entities.  Because of the complexity of the transactions and the need for regulatory approval, the negotiations took nearly two years.  Banorte entered into and executed a purchase agreement for the purchase of Motran sometime in January 2007.  However plaintiff is informed and believes that the actual closing of the purchase was not completed until several months later or alternately the closing has not yet been completed.

23.     On the other hand, Banorte completed the acquisition of UniTeller during the term of Mr. Butner's PSA contract with Banorte.  The purchase and transfer of the UniTeller assets was completed on or about January 18, 2007.

B.     <u>Pre-Closing Discussions Between Banorte and Mr. Butner Regarding His Role in the Newly Acquired Money Remittance Entities.</u>

24.     Based on Mr. Butner's expertise in the money remittance business and based on his provision of consultant services, executives from Banorte and Mr. Butner began to discuss the role that Mr. Butner would play in the newly acquired business entities (UniTeller and Motran Services) and the merger of these businesses into Banorte's United States operations.

25.     In or around December 2006, Mr. Butner and Banorte executives, including Antonio Emilio Ortiz Cobos (hereafter "Mr. Ortiz Cobos") and Mr. Guerra, continued a discussion that had been occurring over the previous six to twelve months regarding the role Mr. Butner would play in the money remittance organizations that Banorte was soon to purchase.

26.     The executives and Mr. Butner specifically discussed that Mr. Butner would have an executive level position and would run the money remittance organizations because of his skill, the quality of services provided to Banorte during the term of his Professional Services Agreement, the trust level that existed between Banorte and Mr. Butner based on the long-term relationship between the parties, and Mr. Butner's expertise in the money remittance business.

27.     During this time, Mr. Butner informed Banorte executives including Messrs. Ortiz

COMPLAINT FOR DAMAGES

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

Cobos and Guerra that he had been approached by other companies concerning consulting and/or corporate officer employment.  Mr. Butner informed Messrs. Ortiz Cobos and Guerra that, as long as they intended to complete and close the purchase of UniTeller and Motran Services and install Mr. Butner as a senior manager, he was content to continue to provide consulting services to Banorte. Both Messrs. Ortiz Cobos and Guerra confirmed that Mr. Butner would be given a senior manager position at the new money remittance organization once the closings occurred.

28.    Concurrently with the purchase of UniTeller, Mr. Butner had several conversations with Mr. Guerra concerning Mr. Butner's future employment in the newly acquired company (UniTeller) and the role he would play within Motran Services which was anticipated to ultimately combine with UniTeller.

29.    During these conversations, Mr. Guerra requested that Mr. Butner relocate from his home and office in Pasadena, California to New Jersey where UniTeller's headquarters were located. In return, Mr. Guerra promised Mr. Butner an ongoing employment relationship with UniTeller and told him he would eventually "run the company" as Chief Executive Officer ("CEO"), President, Chief Operations Officer ("COO") or in a position with a similar title upon the departure of the current UniTeller CEO which would occur within six months.

30.    Mr. Guerra and Mr. Butner agreed that Mr. Butner's initial and interim title at UniTeller would be as an Executive Vice President.  In his role as an interim Executive Vice President, Mr. Butner would receive a salary of $142,000 per year plus bonus and other employee benefits including health insurance and a relocation bonus of $21,000.

31.    The purpose of naming Mr. Butner as an Executive Vice President rather than as CEO, President or COO, as had been discussed, was to prevent the departure of the then current Chief Executive Officer, Luis Eduardo Gutiérrez Arberas (hereafter "Mr. Gutiérrez") and Mr. Gutiérrez's son, Luis Eduardo Gutiérrez-Sheris (hereafter "Mr. Gutiérrez-Sheris").

32.    The discussions between the Banorte executives (Messrs. Ortiz Cobos and Guerra) on the one hand, and Mr. Butner on the other, were for a transition plan in which Mr. Gutiérrez was to be phased out of running the UniTeller operations and that Mr. Butner was to take his place.  Mr. Gutiérrez was unaware of the transition plan in which he was to lose his role as CEO.

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

33.     Mr. Ortiz Cobos, Mr. Guerra, and other Banorte executives also promised Mr. Butner that they planned to grow UniTeller's profits by expanding the company's volume of business.  They explicitly told Mr. Butner that they planned to increase the value of their investment in UniTeller by increasing revenue as opposed to decreasing costs.  None of the Banorte executives informed Mr. Butner that he would not be appointed as the President, COO or CEO position due to a planned cost reduction strategy for Banorte.

34.     In or around November 2006, the parties agreed that in order to expedite Mr. Butner's transition to the UniTeller offices in New Jersey and to immediately begin working on the UniTeller integration plan, as a temporary measure, Mr. Butner and Banorte would extend the Professional Services Agreement through March 31, 2007 while the parties negotiated the terms of a new employment agreement.

35.     In or around late December 2006, Mr. Butner temporarily relocated from Pasadena, California to New Jersey in order to facilitate the transition plans, to familiarize himself with UniTeller's operations, and to assume a greater role in the anticipated closing of the UniTeller purchase.

C.  Prior to and Immediately After the Close of the UniTeller Purchase, Mr. Butner Is Identified in the Transition Plans as an Executive Officer.

36.     Throughout the pre-closing and post-closing time period during the acquisition of UniTeller, several transition and integration plans were being circulated and revised in an effort to merge the new executive team that Banorte wished to place at the UniTeller operations.

37.     In approximately November 2006, Mr. Butner created two separate integration plans, as requested by Banorte executives, which would assist and guide the Banorte executives in integrating the UniTeller business operations into the new Banorte structure.

38.     One of the integration plans was known as the "UniTeller" plan which was widely distributed among Banorte and UniTeller executives and managers which indicated that the leadership and job roles at UniTeller would continue "as is" and the only addition was the placement of Mr. Butner and a Banorte employee to be named later in the UniTeller executive positions.

39.     A second plan known as the "Esteban De la Paz" plan which was narrowly distributed

- 7 -

among upper-level Banorte executives and managers, Esteban De la Paz (the current CEO of Motran), and Mr. Butner, showed the ouster of both Mr. Gutierrez and Mr. Gutiérrez-Sheris, and the placing of Mr. Butner in the President, COO or CEO position.

40.     As late as January, 2007, Mr. Butner's name was included in the various integration plans then circulating among Banorte executives.  Mr. Butner was highlighted as member of the "New Management Team" that would be integrated into the UniTeller business.  Additionally, in the various integration plans circulating among Banorte and GF Banorte executives was a notation that Mr. Butner would need a new employment contract.

41.     Mr. Butner was further identified as a member of the "Advisory Board" which would be created by the Banorte Board of Directors and function as the functional board of directors until the UniTeller business was absorbed and integrated into Banorte.  In the post-closing stratagem, Mr. Butner was identified as a corporate officer and his title was noted as "Executive Vice President."

42.     In documents outlining the UniTeller and Banorte "Goals and Objectives for 2007," Mr. Butner was identified as being a member of the UniTeller "Steering Committee" and as a new addition to and a part of the new UniTeller "Management Team."  Specifically, Mr. Butner was identified as having the title of "Executive Vice President – Corporate Affairs."

43.     As part of his outlined job duties as the Executive Vice President of Corporate Affairs, Mr. Butner was to act as a liaison between Banorte and UniTeller, responsible for implementing Banorte's strategic objectives and responsible for team/matrix reporting.  In the team/matrix reporting structure, Mr. Butner was identified as having an overlay of responsibilities to all existing UniTeller operations and his role was to provide insight and support to implement Banorte's strategic objectives.

44.     Mr. Butner was further identified as a person to be given "signing authority" within UniTeller such that he would have authority to bind UniTeller on various contracts, and Mr. Butner was listed as an authorized signer on behalf of UniTeller.  As an authorized signer Mr. Butner would have authority to approve requisitions, disbursements, recurrent expenses/contracts, agent offerings, credit events, BSA/OFAC daily and report approvals, and other various UniTeller internal and bank-related transactions.

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

COMPLAINT FOR DAMAGES

1

2    D. <u>Mr. Butner Is Promised a Position, Title and Salary at UniTeller and Accepts Banorte's Offer</u>.

3        45.    On the closing of the UniTeller purchase on January 18, 2007, Mr. Guerra promised

4    Mr. Butner that after Mr. Gutiérrez left UniTeller, Mr. Butner would be promoted to CEO, President,

5    COO or similar title and would receive an increased salary similar to that received by Mr. Gutiérrez

6    which was $180,000 per year plus bonus and other employee benefits.  In approximately February,

7    2007, Mr. Guerra informed Mr. Butner that Mr. Gutiérrez, the then current CEO, was expected to

8    leave UniTeller shortly.

9        46.    Based upon UniTeller's representations that (1) Mr. Butner would shortly become

10   CEO, President, COO or similar title of UniTeller; (2) Mr. Butner would receive an increased salary

11   of approximately $180,000 per year plus bonus and other employee benefits including a $21,000

12   relocation bonus; (3) that Banorte planned on increasing UniTeller's revenue by volume expansion,

13   not "cost reductions", which included his own termination, and (4) that Mr. Butner's position with

14   UniTeller would be safe, Mr. Butner accepted UniTeller's employment offer in early February, 2007

15   as Executive Vice President of Corporate Affairs.  Upon accepting the position of Executive Vice

16   President, Mr. Butner was led to believe that he would move into the role of CEO, COO or other

17   officer position that would run the company upon the departure of Mr. Gutiérrez.

18       47.    Immediately after the closing on January 18, 2007, Mr. Butner and Banorte – through

19   UniTeller's general counsel, Ronald Schwartzman (hereafter "Mr. Schwartzman") – began

20   negotiating the terms of the employment contract under which Mr. Butner would be employed at

21   UniTeller.  The parties came to a meeting of the minds with respect to the essential terms of the

22   employment contract sometime in late January or early February 2007.  A draft document titled

23   "Employment Agreement" was circulated between Mr. Butner and Banorte.  However, the

24   Employment Agreement was never fully executed by the parties.

25       48.    Nonetheless, Mr. Butner informed Mr. Guerra that he was going to commit to living in

26   New Jersey for at least one year (in anticipation that the headquarters of the Banorte money

27   remittance business would likely be relocated to Texas) and that he was going to proceed to lease a

28   New Jersey apartment, purchase furniture and house wares to furnish this apartment, and lease a

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

COMPLAINT FOR DAMAGES

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1   vehicle to commute to work.  Mr. Guerra specifically agreed and informed Mr. Butner that he should

2   proceed with relocating to New Jersey.

3         49.    Based on the good working relationship and history between Banorte and Mr. Butner,

4   the promises and representations made by Banorte executives, and the full knowledge and consent of

5   high-level Banorte executives, Mr. Butner permanently relocated over 2,800 miles from Pasadena,

6   California to Westwood, New Jersey.  Mr. Butner made his New Jersey residence permanent by,

7   among other things, entering into an apartment lease in New Jersey, leasing a new car in New Jersey,

8   renting a parking spot in New Jersey for the new car he had leased, and purchasing and assembling

9   new furniture and house wares for his New Jersey apartment.

10

11       E.   Mr. Butner Holds Himself Out as a UniTeller Executive Vice President.

12         50.    After the close of the acquisition of UniTeller by Banorte, Mr. Butner, with the full

13   knowledge and consent of UniTeller and Banorte executives, held himself out as an officer of

14   UniTeller.  The purpose of having Mr. Butner as an executive was to use Mr. Butner's financial

15   services and banking experience at UniTeller, act as the sole Banorte representative in UniTeller

16   management, and to help secure regulatory approval from various state and federal agencies so that

17   Banorte could acquire Motran Services.  Among the activities that Mr. Butner undertook to hold

18   himself out as a UniTeller executive were:

19         (a)    Mr. Butner was given the title, was referred to in documents, correspondence,

20   business plans and other UniTeller documents as "Executive Vice President of Corporate Affairs;"

21         (b)    Mr. Butner would sign documents on behalf of UniTeller as Executive Vice

22   President;

23         (c)    Mr. Butner forwarded to Banorte's outside counsel a personal "Interagency

24   Biographical and Financial Report" for the State of California on behalf of Motran Services.  The

25   biographical and financial report was a necessary document that would be submitted and filed with

26   the State of California in direct response to the executive level position that Mr. Butner would be

27   holding within Motran Services;

28         (d)    Mr. Butner submitted and filed his fingerprint records with the California

Department of Financial Institutions as the representative who would lead the Motran Services business after it was acquired by Banorte.  The filing of Mr. Butner's fingerprint records was a necessary step whenever a regulated financial institution changes ownership because the Department of Financial Institutions needed assurance that among other things, any executive who will run a financial institution has not been convicted of any crimes; and

(e)     Mr. Butner submitted and filed a personal background and financial information statements for the States of Arizona and Washington which were a prerequisite for financial institution officers.  For each of these states, Mr. Butner submitted detailed personal background information regarding his personal assets, his employment history and whether he had been convicted of any criminal offenses.

51.     Unknown to Mr. Butner at the time he accepted the offer and moved to New Jersey, Banorte was already considering and/or had already decided to radically alter the business strategy for UniTeller by focusing on cost reductions in the form of employment terminations in addition to volume expansion.

52.     Mr. Guerra and other UniTeller personnel convinced Mr. Butner to accept the UniTeller job offer and move to New Jersey, while knowing, or while they should have known that they had serious doubts about whether Mr. Butner would ultimately be employed by UniTeller, at least in the positions as previously promised.

53.     In late March 2007, Carlos I. Garza (hereafter "Mr. Garza") replaced Mr. Ortiz Cobos as head of Banorte USA.  Mr. Ortiz Cobos and Mr. Guerra abruptly terminated the Professional Service Agreement with Mr. Butner informing him that UniTeller's Chief Counsel (Mr. Schwartzman) would assume the COO position at UniTeller instead of Mr. Butner.

54.     No written notice or documentation was given to Mr. Butner informing him that the PSA contract was terminated nor did Banorte provide the necessary 30 day notice of termination of the contract as required by the agreement.

///

///

///

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 11 -

### First Cause of Action
### VIOLATION OF CAL. LABOR CODE § 970
### Against All Defendants

As a first, separate and distinct cause of action, plaintiff complains against all defendants and Does One through Five and for a cause of action alleges:

55.     Plaintiff re-alleges and incorporates into this Cause of Action each and every allegation set forth in paragraphs 1 through 54 as though fully set forth in this cause of action.

56.     California Labor Code § 970 provides that, "[n]o person or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from . . . any place within the state to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken [or] written, . . . concerning either: (a) the kind, character or existence of such work; (b) the length of time such work will last, or the compensation therefore . . .".

57.     Defendants made knowingly false representations to Mr. Butner to induce him to accept employment with UniTeller.  Among the misrepresentations and omissions made to Mr. Butner were, but not limited to, the following:

(a)     Banorte executives –  including Messrs. Ortiz Cobos and Guerra – represented to Mr. Butner that he would "run the company" in an executive level position in the newly acquired and integrated UniTeller;

(b)     When Mr. Butner informed Banorte executives that he had been approached with other employment opportunities, Messrs. Ortiz Cobos and Guerra again confirmed and reiterated that Mr. Butner would be given a senior manager position at the new money remittance organization once the closing occurred;

(c)     Banorte, through Mr. Guerra, represented that Mr. Butner's initial and interim title at UniTeller would be as an Executive Vice President and that he would receive a salary of $142,000 per year plus bonus, a relocation bonus of $21,000 and other employee benefits including health insurance;

(d)     Messrs. Ortiz Cobos and Guerra  informed Mr. Butner that after Mr. Gutiérrez

- 12 -

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

left UniTeller, Mr. Butner would be promoted to CEO, President, COO or similar title;

(e)    Messrs. Ortiz Cobos and Guerra represented to Mr. Butner that he would receive a salary similar to that received by Mr. Gutiérrez which was $180,000 per year plus bonus and other employee benefits;

(f)    Just prior to the close of the purchase of UniTeller, Banorte, through Mr. Guerra, requested that Mr. Butner, as a condition of his new employment, relocate from his home in Pasadena, California to New Jersey where UniTeller's headquarters were located in order to assist in the integration plans and transition;

(g)    Banorte executives and others affiliated with UniTeller represented to Mr. Butner that they planned to grow UniTeller's profits by expanding the company's volume of business.  Banorte executives and others affiliated with Banorte further represented that they planned to increase the value of their investment in UniTeller by increasing revenue as opposed to decreasing costs; and

(h)    Banorte executives and others affiliated with Banorte failed to inform Mr. Butner that he would not receive or could lose his President, COO or CEO position due to a planned cost reduction strategy for the newly merged and created company.

58.    The above-noted statements were all untrue, were greatly exaggerated, or were known to be untrue and exaggerated by defendants at the time they were made and at the time Mr. Butner accepted defendants' employment offer in February, 2007 and made the decision, with the full knowledge and consent of defendants to relocate to New Jersey and to make New Jersey his residence.

59.    Defendants used the misrepresentations to induce Plaintiff to change his employment, to forego other employment opportunities, and to change his place of residence from the State of California to the State of New Jersey, a result defendants could not have achieved truthfully.  Under the circumstances, plaintiff's reliance on the misrepresentations of defendants was reasonable and justified.

60.    Plaintiff did not discover the representations were false until late March 2007 when Mr. Butner  was informed UniTeller's Chief Counsel would assume the COO position instead of Mr.

- 13 -

Butner, and that the position wherein Mr. Butner would "run the company" as promised would not be forthcoming.

61.     As a proximate result of the representations, Plaintiff was persuaded to move from the State of California to the State of New Jersey, thereby incurring travel, relocation, moving, and personal expenses for himself in the sum of approximately $13,500 Plaintiff was further damaged by the loss of wages, bonuses, employee benefits, and other compensation.

62.     California Labor Code § 972 provides that violations of Section 970 allow for the recovery of "double damages."

63.     In addition, plaintiff is entitled by statute to recover his reasonable attorneys' fees, costs of suit, and interest on the unpaid amounts pursuant to Labor Code §§ 2699 and 2699.5.

**Second Cause of Action**
**DECEIT (INTENTIONAL MISREPRESENTATION)**
**Against All Defendants**

As a second, separate and distinct cause of action, plaintiff complains against all defendants and Does One through Five and for a cause of action alleges:

64.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 54 inclusive, as though fully set forth in this cause of action.

65.     Defendants made certain misrepresentations to plaintiff including but not limited to the following:

(a)     Banorte executives – including Messrs. Ortiz Cobos and Guerra – represented to Mr. Butner that he would "run the company" in an executive level position in the newly acquired and integrated UniTeller;

(b)     When Mr. Butner informed Banorte executives that he had been approached with other employment opportunities, Messrs. Ortiz Cobos and Guerra again confirmed and reiterated that Mr. Butner would be given a senior manager position at the new money remittance organization once the closing occurred;

(c)     Banorte, through Mr. Guerra, represented that Mr. Butner's initial and interim

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

title at UniTeller would be as an Executive Vice President and that he would receive a salary of $142,000 per year plus bonus, plus a relocation bonus of $21,000, and other employee benefits including health insurance;

(d)     Messrs. Ortiz Cobos and Guerra  informed Mr. Butner that after Mr. Gutiérrez left UniTeller, Mr. Butner would be promoted to CEO, President, COO or similar title;

(e)     Messrs. Ortiz Cobos and Guerra represented to Mr. Butner that he would receive a salary similar to that received by Mr. Gutiérrez which was $180,000 per year plus bonus and other employee benefits;

(f)     Just prior to the close of the purchase of UniTeller, Banorte, through Mr. Guerra, requested that Mr. Butner, as a condition of his new employment, relocate from his home in Pasadena, California to New Jersey where UniTeller's headquarters were located in order to assist in the integration plans and transition;

(g)     Banorte executives and others affiliated with UniTeller represented to Mr. Butner that they planned to grow UniTeller's profits by expanding the company's volume of business.  Banorte executives and others affiliated with Banorte further represented that they planned to increase the value of their investment in UniTeller by increasing revenue as opposed to decreasing costs; and

(h)     Banorte executives and others affiliated with Banorte failed to inform Mr. Butner that he would not receive or could lose his President, COO or CEO position due to a planned cost reduction strategy for the newly merged and created company.

66.     Defendants used the misrepresentations to induce Plaintiff to continue working for defendants based on the aforementioned representations, to forego other consulting and employment opportunities, and to give up his residence in the State of California to move to the State of New Jersey, all results that the defendants could not have achieved truthfully.  Defendants knew said representations to be false and intended to conceal the true facts from Plaintiff to unlawfully persuade plaintiff to act in the aforementioned manner.

67.     Plaintiff discovered the representations were false in late March 2007 when Mr. Butner was informed that UniTeller's Chief Counsel would assume the COO position instead of Mr.

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 15 -

Butner, and that the position wherein he would "run the company" as promised would not be forthcoming.

68.     Plaintiff suffered damages proximately caused by these defendants' acts or omissions or both as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**Third Cause of Action**
**PROMISSORY FRAUD**
**Against All Defendants**

As a third, separate and distinct cause of action, plaintiff complains against all defendants and Does One through Five and for a cause of action alleges:

69.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 54 inclusive, as though fully set forth in this cause of action.

70.     Defendants made certain and clear promises, assurances, and guarantees to plaintiff, including but not limited to the following:

(a)     Banorte executives – including Messrs. Ortiz Cobos and Guerra – represented to Mr. Butner that he would "run the company" in an executive level position in the newly acquired and integrated UniTeller;

(b)     When Mr. Butner informed Banorte executives that he had been approached with other employment opportunities, Messrs. Ortiz Cobos and Guerra again confirmed and reiterated that Mr. Butner would be given a senior manager position at the new money remittance organization once the closing occurred;

(c)     Banorte, through Mr. Guerra, represented that Mr. Butner's initial and interim title at UniTeller would be as an Executive Vice President and that he would receive a salary of $142,000 per year plus bonus, plus a relocation bonus of $21,000, and other employee benefits including health insurance;

(d)     Messrs. Ortiz Cobos and Guerra  informed Mr. Butner that after Mr. Gutiérrez left UniTeller, Mr. Butner would be promoted to CEO, President, COO or similar title;

(e)     Messrs. Ortiz Cobos and Guerra represented to Mr. Butner that he would

- 16 -

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1   receive a salary similar to that received by Mr. Gutiérrez which was $180,000 per year plus bonus

2   and other employee benefits;

3          (f)     Just prior to the close of the purchase of UniTeller, Banorte, through Mr.

4   Guerra, requested that Mr. Butner, as a condition of his new employment, relocate from his home in

5   Pasadena, California to New Jersey where UniTeller's headquarters were located in order to assist in

6   the integration plans and transition;

7          (g)     Banorte executives and others affiliated with UniTeller represented to Mr.

8   Butner that they planned to grow UniTeller's profits by expanding the company's volume of

9   business.  Banorte executives and others affiliated with Banorte further represented that they planned

10  to increase the value of their investment in UniTeller by increasing revenue as opposed to decreasing

11  costs; and

12         (h)     Banorte executives and others affiliated with Banorte failed to inform Mr.

13  Butner that he would not receive or could lose his President, COO or CEO position due to a planned

14  cost reduction strategy for the newly merged and created company.

15         71.    The representations and promises by Banorte executives were never intended to be

16  performed by Banorte.  Defendants knew said representations to be false and intended to conceal the

17  true facts from Plaintiff to unlawfully persuade Plaintiff to move from Pasadena, California and use

18  his skill and expertise to their benefit in setting up a new enterprise.

19         72.    Defendants used the representations and promises to induce Plaintiff to change his

20  employment, to continue working for defendants based on the aforementioned representations, to

21  forego other consulting and employment opportunities, and to give up his residence in the State of

22  California to move to the State of New Jersey, all results that the defendants could not have achieved

23  truthfully.

24         73.    Plaintiff did not discover the fraud and deceit practiced upon him as set forth herein

25  until after he started his employment with defendants, attempted to fulfill the position and

26  responsibilities represented by the defendants, and was later informed that the position for which he

27  had left California was not available to him and thereby realized that defendants' representations

28  were false.

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 17 -

74.     Plaintiff suffered damages proximately caused by these defendants' acts or omissions or both as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**Fourth Cause of Action**
**FRAUDULENT CONCEALMENT**
**Against All Defendants**

As a fourth, separate and distinct cause of action, plaintiff complains against all defendants and Does One through Five and for a cause of action alleges:

75.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 54 inclusive, as though fully set forth in this cause of action.

76.     Defendants failed to disclose or suppressed certain material facts including but not limited to the following:

(a)     Banorte executives – including Messrs. Ortiz Cobos and Guerra – failed to disclose to Mr. Butner that he would not in fact be placed in an executive level position wherein he would "run the company" in the newly acquired and integrated UniTeller;

(b)     When Mr. Butner informed Banorte executives that he had been approached with other employment opportunities, Messrs. Ortiz Cobos and Guerra failed to disclose that Mr. Butner either would not be given or that there was a possibility that he would not be given a senior manager position at the new money remittance organization once the closing occurred;

(c)     Banorte, through Mr. Guerra, failed to disclose to Mr. Butner's he would not be placed in the position of Executive Vice President at UniTeller and that he would not receive a salary of $142,000 per year plus bonus, plus a relocation bonus of $21,000, and other employee benefits including health insurance.

(d)     Messrs. Ortiz Cobos and Guerra failed to disclose to Mr. Butner that after Mr. Gutiérrez left UniTeller, Mr. Butner would not be promoted to CEO, President, COO or similar title;

(e)     Messrs. Ortiz Cobos and Guerra failed to disclose to Mr. Butner that he would not receive a salary similar to that received by Mr. Gutiérrez which was $180,000 per year plus bonus and other employee benefits;

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 18 -

(f)     Banorte executives and others affiliated with UniTeller failed to disclose to Mr. Butner that they did not plan to grow UniTeller's profits by expanding the company's volume of business, and instead Banorte planned to increase the value of their investment in UniTeller by decreasing costs; and

(g)     Banorte executives and others affiliated with Banorte further failed to inform Mr. Butner that he would not receive or could lose his President, COO or CEO position due to a planned cost reduction strategy for the newly merged and created company.

77.     Defendants intentionally concealed and suppressed the above-noted facts in order to persuade Plaintiff to move from Pasadena, California to the State of New Jersey and to use his skill and expertise to their benefit in setting up a new enterprise.

78.     Plaintiff was unaware of the facts as concealed by defendants and would not have foregone other consulting and employment opportunities and moved to the State of New Jersey had he known of the above-noted facts as concealed or suppressed by defendants.

79.     Plaintiff did not discover the concealment as set forth herein until after he started his employment with defendants, attempted to fulfill the position and responsibilities represented by the defendants, and was later informed that the position for which he had left California was not available to him and thereby realized that defendants' concealed or suppressed certain material facts.

80.     Plaintiff suffered damages proximately caused by these defendants' acts or omissions or both as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

## Fifth Cause of Action
### NEGLIGENT MISREPRESENTATION
### Against All Defendants

As a fifth, separate and distinct cause of action, plaintiff complains against all defendants and Does One through Five and for a cause of action alleges:

81.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 54 inclusive, as though fully set forth in this cause of action.

82.     Defendants made certain misrepresentations to plaintiff including but not limited to

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 19 -

the following:

(a)     Banorte executives – including Messrs. Ortiz Cobos and Guerra – represented to Mr. Butner that he would "run the company" in an executive level position in the newly acquired and integrated UniTeller;

(b)     When Mr. Butner informed Banorte executives that he had been approached with other employment opportunities, Messrs. Ortiz Cobos and Guerra again confirmed and reiterated that Mr. Butner would be given a senior manager position at the new money remittance organization once the closing occurred;

(c)     Banorte, through Mr. Guerra, represented that Mr. Butner's initial and interim title at UniTeller would be as an Executive Vice President and that he would receive a salary of $142,000 per year plus bonus, plus a relocation bonus of $21,000, and other employee benefits including health insurance;

(d)     Messrs. Ortiz Cobos and Guerra  informed Mr. Butner that after Mr. Gutiérrez left UniTeller, Mr. Butner would be promoted to CEO, President, COO or similar title;

(e)     Messrs. Ortiz Cobos and Guerra represented to Mr. Butner that he would receive a salary similar to that received by Mr. Gutiérrez which was $180,000 per year plus bonus and other employee benefits;

(f)     Just prior to the close of the purchase of UniTeller, Banorte, through Mr. Guerra, requested that Mr. Butner, as a condition of his new employment, relocate from his home in Pasadena, California to New Jersey where UniTeller's headquarters were located in order to assist in the integration plans and transition;

(g)     Banorte executives and others affiliated with UniTeller represented to Mr. Butner that they planned to grow UniTeller's profits by expanding the company's volume of business.  Banorte executives and others affiliated with Banorte further represented that they planned to increase the value of their investment in UniTeller by increasing revenue as opposed to decreasing costs; and

(h)     Banorte executives and others affiliated with Banorte failed to inform Mr. Butner that he would not receive or could lose his President, COO or CEO position due to a planned

- 20 -

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1   cost reduction strategy for the newly merged and created company.

2        83.     Defendants did not have reasonable grounds to believe the above-noted

3   representations to be true and intended to conceal the true facts from Plaintiff.  Defendants intended

4   and used the misrepresentations to induce Plaintiff to change his employment, to forgo other

5   employment opportunities, and to move from the State of California to the State of New Jersey, a

6   result defendants could not have achieved truthfully.

7        84.     In reliance on the representations and in ignorance of the falsity thereof, plaintiff did

8   in fact begin working for defendants, changed his place of residence by moving from Pasadena,

9   California to Westwood, New Jersey for the purpose of working for defendants, and plaintiff gave up

10  other employment, business and consulting opportunities.

11       85.     Plaintiff discovered the representations were false in late March 2007 when Mr.

12  Butner was informed that UniTeller's Chief Counsel would assume the COO position instead of Mr.

13  Butner, and that the position wherein he would "run the company" as promised would not be

14  forthcoming.

15       86.     Plaintiff suffered damages proximately caused by these defendants' acts or omissions

16  or both as stated in the section below entitled "DAMAGES," which is incorporated here to the extent

17  pertinent as if set forth here in full.

## Sixth Cause of Action
### PROMISSORY ESTOPPEL
### Against All Defendants

21       As a sixth, separate and distinct cause of action, plaintiff complains against all defendants and

22  Does One through Five and for a cause of action alleges:

23       87.     Plaintiff re-alleges and incorporates into this Cause of Action each and every

24  allegation set forth in paragraphs 1 through 54 as though fully set forth in this cause of action.

25       88.     Defendants made certain and clear promises, assurances, and guarantees to plaintiff,

26  including but not limited to the following:

27            (a)    Banorte executives – including Messrs. Ortiz Cobos and Guerra – represented

28  to Mr. Butner that he would "run the company" in an executive level position in the newly acquired

- 21 -

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1   and integrated UniTeller;

2          (b)    When Mr. Butner informed Banorte executives that he had been approached

3   with other employment opportunities, Messrs. Ortiz Cobos and Guerra again confirmed and reiterated

4   that Mr. Butner would be given a senior manager position at the new money remittance organization

5   once the closing occurred;

6          (c)    Banorte, through Mr. Guerra, represented that Mr. Butner's initial and interim

7   title at UniTeller would be as an Executive Vice President and that he would receive a salary of

8   $142,000 per year plus bonus, plus a relocation bonus of $21,000, and other employee benefits

9   including health insurance;

10         (d)    Messrs. Ortiz Cobos and Guerra  informed Mr. Butner that after Mr. Gutiérrez

11   left UniTeller, Mr. Butner would be promoted to CEO, President, COO or similar title;

12         (e)    Messrs. Ortiz Cobos and Guerra represented to Mr. Butner that he would

13   receive a salary similar to that received by Mr. Gutiérrez which was $180,000 per year plus bonus

14   and other employee benefits;

15         (f)    Just prior to the close of the purchase of UniTeller, Banorte, through Mr.

16   Guerra, requested that Mr. Butner, as a condition of his new employment, relocate from his home in

17   Pasadena, California to New Jersey where UniTeller's headquarters were located in order to assist in

18   the integration plans and transition;

19         (g)    Banorte executives and others affiliated with UniTeller represented to Mr.

20   Butner that they planned to grow UniTeller's profits by expanding the company's volume of

21   business.  Banorte executives and others affiliated with Banorte further represented that they planned

22   to increase the value of their investment in UniTeller by increasing revenue as opposed to decreasing

23   costs; and

24         (h)    Banorte executives and others affiliated with Banorte failed to inform Mr.

25   Butner that he would not receive or could lose his President, COO or CEO position due to a planned

26   cost reduction strategy for the newly merged and created company.

27       89.    Defendants made the above-noted promises to plaintiff for the purpose of inducing

28   him to forsake other employment opportunities and to relocate from his home state to another state.

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1   Defendants' promises were promises of the kind that they should expect to induce action or

2   forbearance on the part of plaintiff in reliance on these promises.  In fact, Plaintiff justifiably and

3   reasonably relied upon defendants' promises.

4        90.     Plaintiff suffered substantial detriment in that defendants failed to follow through on

5   their promises causing Plaintiff to incur debts and liabilities that he would not otherwise have

6   incurred.

7        91.     Plaintiff suffered damages proximately caused by these defendants' acts or omissions

8   or both as stated in the section below entitled "DAMAGES," which is incorporated here to the extent

9   pertinent as if set forth here in full.

### Seventh Cause of Action
### BREACH OF CONTRACT
### Against All Defendants

13   As a seventh, separate and distinct cause of action, plaintiff complains against all defendants

14   and Does One through Five and for a cause of action alleges:

15        92.     Plaintiff re-alleges and incorporates into this Cause of Action each and every

16   allegation set forth in paragraphs 1 through 54 as though fully set forth in this cause of action.

17        93.     The terms of the Professional Services Agreement ("PSA") entered into on September

18   1, 2004 between plaintiff, Mr. Butner on the one hand, and defendant Banorte, on the other hand,

19   stated that either party (Banorte or Butner) could terminate the PSA "through written prior notice to

20   the other party with at least thirty (30) days in advance of the date of the termination."

21        94.     Sometime in late March 2007, Mr. Ortiz Cobos and Mr. Guerra informed Mr. Butner

22   that the PSA contract would not be renewed and that Mr. Butner's services were no longer needed.

23        95.     Defendants failed to carry out the terms of the Professional Services Agreement and

24   terminated plaintiff's contract without providing the required 30 days written notice (or payment of

25   monies in lieu thereof) thus breaching a material term of the PSA.

26        96.     Further defendants breached the PSA by engaging in the actions, omissions or

27   misrepresentations or all of the above as set forth throughout this Complaint.  Defendants' actions,

28   omissions or misrepresentations deprived Mr. Butner of the benefit of the employment bargain.

- 23 -

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

97.     Plaintiff, on his behalf, duly performed all conditions, covenants and promises under the PSA to be performed on his part, and plaintiff has at all times been ready, willing and able to perform all of the conditions of the PSA.

98.     Plaintiff suffered damages proximately caused by these defendants' acts or omissions or both as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### DAMAGES

99.     As a direct and proximate cause of defendants' unlawful acts as set forth in this Complaint, plaintiff has suffered and continues to suffer substantial losses in earnings, future earnings, bonuses, deferred compensation, and other employment benefits.  Plaintiff is entitled to receive compensatory damages from these defendants and hereby requests an award of compensatory damages according to proof.  Plaintiff will seek leave to amend this complaint to state the amount or will proceed according to proof at trial.

100.     For causes of action Two, Three, Four and Five, Plaintiff is informed and believes and on that, basis alleges that defendants acted willfully, knowingly, and intentionally engaging in the pattern of conduct described herein.  Plaintiff is informed and believes, and on that basis alleges that in doing the acts and in engaging in the conduct herein alleged, defendants acted in conscious disregard of the rights of plaintiff and engaged in despicable conduct which has subjected plaintiff to cruel and unjust hardship.  Further, plaintiff is informed and believes and on that basis alleges that defendants in doing the acts and engaging in the conduct herein alleged acted with a willful and conscious disregard for the property or legal rights of Plaintiff.  Because defendants have acted with such oppression, fraud and malice, plaintiff is entitled to exemplary or punitive damages, pursuant to Civil Code Section 3294 in an amount that will punish defendants for the conduct described herein and in an amount that will deter them and others from engaging in similar conduct in the future.

///

///

///

- 24 -

PRAYER

**Wherefore**, Plaintiff prays for judgment as follows:

1.    For a money judgment representing compensatory damages including lost wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

2.    For costs of suit;

3.    For prejudgment and post-judgment interest;

4.    For an award of double damages pursuant to Labor Code § 970;

5.    For attorneys' fees pursuant to California Labor Code §§ 970, 971, 2699 and 2699.5, California Code of Civil Procedure §1021.5, and any other appropriate authority;

6.    For an award of exemplary and punitive damages in an amount sufficient to punish each defendant and deter future acts of unlawful conduct against other individuals, in an amount according to proof; and

7.    For any other relief that is just and proper.

Date: March 14, 2008                    THE ERLICH LAW FIRM

By:  Jason M. Erlich, Esq.
Attorney for Plaintiff Raymond Butner

JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues, except for attorneys' fees.

Date: March 14, 2008                    THE ERLICH LAW FIRM

By:  Jason M. Erlich, Esq.
Attorney for Plaintiff Raymond Butner

THE ERLICH LAW FIRM
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

- 25 -

JASON M. ERLICH, ESQ., Cal. Bar # 203661
THE ERLICH LAW FIRM
150 Post Street, Suite 742
San Francisco, CA 94108
Tel: (415) 296-8420
Attorney for Plaintiff Raymond Butner

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND D. BUTNER<br><br>PLAINTIFF(S)<br><br>v.<br><br>BANCO MERCANTIL DEL NORTE, S.A.,<br>INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO<br>FINANCIERO BANORTE, et al.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV08-01764 SJO (RZx)<br><br><br>SUMMONS |

TO:    DEFENDANT(S): *Above name defendant*

A lawsuit has been filed against you.

Within ___20___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __Jason M. Erlich_____, whose address is _150 Post Street, Suite 742, San Francisco CA 94108_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___**MAR 1 4 2008**_____

By: _____
        Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

JASON M. ERLICH, ESQ., Cal. Bar # 203661
THE ERLICH LAW FIRM
150 Post Street, Suite 742
San Francisco, CA 94108
Tel: (415) 296-8420
Attorney for Plaintiff Raymond Butner

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND D. BUTNER <br><br> PLAINTIFF(S) <br><br> v. <br><br> BANCO MERCANTIL DEL NORTE, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE, et al. <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV08-01764  (RZx) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): *Above named defendant*

A lawsuit has been filed against you.

Within ___20___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __Jason M. Erlich_____, whose address is _150 Post Street, Suite 742, San Francisco CA 94108_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____MAR 1 4 2008____

By: _____
**LA'REE HORN**
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1192

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA


**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**


This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV08- 1764 SJO (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.



All discovery related motions should be noticed on the calendar of the Magistrate Judge


=========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [_] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|



Failure to file at the proper location will result in your documents being returned to you.

_____

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Raymond D. Butner | DEFENDANTS<br>BANCO MERCANTIL DEL NORTE, S.A., INSTITUCIÓN DE<br>BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE; GRUPO<br>FINANCIERO BANORTE |
|---|---|
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>County of Los Angeles, State of California | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>JASON M. ERLICH, ESQ., Cal. Bar # 203661<br>THE ERLICH LAW FIRM<br>150 Post Street, Suite 742<br>San Francisco, CA 94108 | Attorneys (If Known)<br>Unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION** under F.R.C.P. 23: ☐ Yes ☑ No   **☐ MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332. Plaintiff asserts claims against foreign citizens for violations of California Labor Codes and common law claims.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rules/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☑ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number: _____

CV-71 (07/05)          CIVIL COVER SHEET          Page 1 of 2